IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY E. RAMEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:15-CV-242 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Anthony E. Ramey ("Ramey"), filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Ramey alleges that the Administrative Law Judge ("ALJ") failed to give proper weight to the opinion of a consultative physician, and erred by relying upon vocational expert testimony provided during the administrative proceeding for one of his prior applications for benefits. I conclude that the ALJ failed to properly resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), and thus the decision is not supported by substantial evidence. Consequently, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 20), **GRANTING IN PART** Ramey's Motion for Summary Judgment (Dkt. No. 16), and **REVERSING** and **REMANDING** this matter for further administrative consideration consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Ramey failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Ramey filed two previous applications for SSI, both of which were denied at the administrative level, and denied by this court on appeal.[2] Ramey protectively filed this third application for SSI on December 6, 2011, claiming that his disability began on November 6, 2008. R. 207–14. The Commissioner denied his application at the initial and reconsideration levels of administrative review. R. 130–40, 144–50. On October 23, 2013, ALJ Steven

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

[2] Ramey filed his first application for benefits in January 2004, it was denied by the ALJ in October 2005, and upheld on appeal to this court in December 2006. See Ramey v. Barnhart, No. 7:06cv80, 2006 WL 3746653, at * 1 (W.D Va. Dec. 14, 2006)(M.J. Urbanski). Ramey's second application for benefits was filed in January 2007, denied by the ALJ by opinion dated November 5, 2008, and upheld on appeal to this court in October 2011. See Ramey v. Astrue, Case No. 7:10cv356, 2011 WL 4895669, at *1 (W.D. Va. Oct. 13, 2011)(J. Wilson). Ramey filed a fourth application for benefits on May 29, 2015, which was granted on March 14, 2016, and awarded benefits as of May 29, 2015. Dkt. No. 23.

2

DeMonbreum held a hearing to consider Ramey's disability claim. R. 44–70. Ramey was represented by an attorney at the hearing. Id.

On November 18, 2013, the ALJ entered his decision analyzing Ramey's claim under the familiar five-step process[3] and denying Ramey's claim for benefits. R. 25–44. The ALJ found that Ramey suffered from the severe impairment of amputated fingers in the right hand. R. 30. The ALJ found that this impairment, either individually or in combination, did not meet or medically equal a listed impairment. R. 31. The ALJ further found that Ramey retained the RFC to perform light work,[4] except he can lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk up to six hours in an eight hour day; sit up to six hours in an eight hour day; can never handle/finger with the right hand; cannot use the right hand for repetitive pushing/pulling; should never crawl or climb ladders, ropes, or scaffolds; can occasionally balance, kneel, crouch and stoop/bend; can frequently climb ramps and stairs; and should avoid exposure to hazards. The ALJ found that Ramey can use his right hand for passive assistance. R. 31. The ALJ determined that Ramey could not return to his past relevant work (R. 38), but that Ramey could work at jobs that exist in significant numbers in the national economy such as security monitor, house sitter and gate attendant. R. 22. Thus, the ALJ concluded that Ramey

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

was not disabled. R. 39. On April 1, 2015, the Appeals Council denied Ramey's request for review (R. 5–8), and this appeal followed.

## ANALYSIS

Ramey has a 12th grade education, and injured his right hand in 1984, resulting in amputation of some of his fingers. After the injury, Ramey worked as a short-order cook, packer, dishwasher, and forklift operator. R. 110, 222. Ramey filed two prior applications alleging disability due to the amputated fingers on his right hand. R. 32. Ramey's applications were denied both times at the administrative level, and the denials were affirmed by this court on appeal. In this third application, Ramey alleges disability due to the amputated fingers on his right hand, and new complaints of pain and arthritis in his left hand. R. 250.

In his opinion denying Ramey's third application for benefits, the ALJ acknowledged that Ramey's right hand is "nearly non-functional," and limited his RFC accordingly. R. 36. The ALJ also found that although Ramey developed carpal tunnel syndrome in his left hand and required carpal tunnel release surgery in 2009 and left index finger surgery in 2011, those issues responded well to surgery and did not cause significant limitations for over 12 months. R. 32. Thus, the ALJ found Ramey's carpal tunnel syndrome in his left hand and left index finger surgery to be non-severe impairments. R. 31.

The ALJ considered the decisions from 2005 and 2008, which denied Ramey disability benefits, and found that the medical evidence following these decisions did not show a significant change in Ramey's health and functional ability. R. 32. Thus, the ALJ assessed Ramey with the same RFC as he was given in 2008, and relied upon the vocational expert's testimony in 2008 that significant jobs existed in the national economy that Ramey could perform. R. 38–39. Ramey asserts that the ALJ erred by relying upon the testimony of the

4

vocational expert who testified during the hearing in his 2008 application for benefits, rather than having a vocational expert testify during his hearing for this application in 2013. In the 2013 decision, the ALJ stated,

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert at the prior hearing whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert at the prior hearing testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as (1) security monitor, with 6,272 jobs in the mid-Atlantic region and 114,660 nationally; (2) house sitter, with 4,500 jobs in Virginia and 550,000 nationally; and (3) gate attendant, with 2,000 jobs regionally and 101,000 nationally. Because the claimant's residual functional capacity has not changed since the prior hearing and decision, which was affirmed by the U.S. District Court, the undersigned finds that he can perform the same jobs the vocational expert opined at the prior hearing.

R. 39.

A number of courts have found that an ALJ's reliance on vocational expert testimony from a prior appeal is proper when the ALJ's present RFC was the "same exact" RFC as that determined in the prior case. See Hylton v. Colvin, No. 4:13cv67, 2015 U.S. Dist. LEXIS 92850, at *19 (W.D. Va. July 17, 2015) (collecting cases); see also Paulson v. Astrue, 368 F. App'x 758, 760 (9th Cir. 2010) (holding that ALJ properly relied on the vocational expert testimony from a prior hearing based on an essentially identical RFC assessment); Byrd v. Astrue, No. 3:07cv121, 2008 WL 4327006 (E.D. Tenn. Sept. 16, 2008) (rejecting claimant's argument that the ALJ erred in relying on previous vocational expert testimony when the claimant's RFC had not changed since the prior decision); but see Satterfield v. Astrue, No. 2:06cv0226, 2009 WL 3028645, at *9 (N.D. Tex. Sept. 22, 2009) (finding that denial of the of the opportunity for cross-examination of the vocational expert was prejudicial and remanding the case to "elicit VE testimony and allow cross-examination of the VE concerning jobs available for

5

an individual of plaintiff's age, education, work history, and RFC.") Thus, the ALJ's reliance on the testimony of the vocational expert during the 2008 hearing is not *per se* improper. However, Ramey also asserts that the representative jobs identified by the vocational expert in 2008 are outside of his RFC and conflict with the DOT. Pl. Br. Summ. J. p. 20.

At step five of the sequential evaluation, the ALJ must determine whether, considering the claimant's age, education, and work experience, the claimant is capable of performing other jobs existing in substantial numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). In making findings at steps four and five, an ALJ may rely on the testimony of a vocational expert. SSR 00-4p, 2000 WL 1898704, at *2. The ALJ and the vocational expert are to rely on the DOT to define any jobs the claimant is able to perform in terms of the exertional, non-exertional, and mental activities they require. Id. Furthermore, the ALJ has a duty to identify any apparent conflicts between the vocational expert's testimony and the DOT. Id. ("When there is an apparent unresolved conflict between [vocational expert] … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] … evidence to support a determination or decision about whether the claimant is disabled.").

In Pearson v. Colvin, the Fourth Circuit held that the ALJ's duty to identify and resolve conflicts with the DOT is independent from any duty the vocational expert may have to identify such conflicts, and that the ALJ's duty extends beyond simply asking the vocational expert whether his testimony is consistent with the DOT. 810 F.3d 204, 208–09 (4th Cir. 2015). Rather, the Fourth Circuit clarified that "the *ALJ* (not the vocational expert)" is required to "'[i]dentify *and* obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the *Dictionary*…." Id. at 208 (emphasis in original) (citing SSR 00-04p). The Fourth Circuit

6

limited the ALJ's duty to identifying "apparent" conflicts, which it held to mean "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the *Dictionary*. For the Ruling [SSR 00-4p] explains that '[i]f the [vocational expert]'s … evidence *appears to conflict* with the [*Dictionary*], the adjudicator will obtain a reasonable explanation for the *apparent* conflict.'" Id. at 209 (emphasis in original).

In Pearson, the apparent conflict at issue involved the degree of reaching required for a job identified by the vocational expert. Id. at 210–11. According to the DOT, the job required frequent reaching, in no specific direction, while the claimant in Pearson was limited to occasional overhead reaching with one arm. Id. The Fourth Circuit found that the ALJ erred by failing to identify and resolve the apparent conflict between the vocational expert's testimony that the claimant could perform the job and the job requirements provided by the DOT. Id. Here, Ramey asserts that the representative jobs identified by the vocational expert in 2008– security monitor, house sitter and gate attendant– require frequent handling with more than one hand and occasional to frequent fingering, which are outside of his RFC restrictions.[5] Pl. Br. Summ. J. p. 20.

Having reviewed the jobs identified by the vocational expert, I find that two of the three representative jobs identified–house sitter and gate attendant– require frequent handling with more than one hand and occasional to frequent fingering, which are outside of Ramey's RFC restrictions. The DOT reflects that the jobs of house sitter (DOT 309.367-010) and gate attendant (DOT 344.667-010) require frequent handling and occasional to frequent fingering; while the job of security monitor (DOT 379.367-010) requires no handling or fingering. Thus, there is an

---

[5] Ramey does not address whether this argument was raised at the administrative hearing in 2008 when the vocational expert testified, or whether the ALJ inquired as to any potential conflict between the vocational expert's testimony and the DOT during the 2008 hearing.

7

apparent conflict between two of the three occupations identified by the vocational expert and cited as representative occupations by the ALJ in his decision, and Ramey's RFC. This apparent conflict is not addressed by the ALJ in the 2013 administrative hearing or decision.

I also cannot determine whether the apparent conflict was resolved by the ALJ in 2008 because the transcript of the 2008 hearing is not filed with the court and is not a part of the record in this case. Section 42 U.S.C. § 405(g) requires "the Commissioner of Social Security [to] file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." Here, the ALJ explicitly based his conclusion that Ramey is "capable of making a successful adjustment to other work that exists in significant number in the national economy" on vocational expert testimony from the 2008 hearing, but that hearing transcript is not a part of the record and is not available for review by this court. R. 39. Thus, I am unable to review the precise hypothetical questions posed to the previous vocational expert, or the vocational expert's responses.[6]

Notably, in Ramey's appeal of the 2008 administrative decision to the District Court, the court dismissed Ramey's argument that the vocational expert's testimony was inconsistent with the DOT and the Vocational Expert Handbook published by the Social Security Administration. See Ramey v. Astrue, No. 7:10cv356, 2011 WL 4895669, at *1, n. 1 (W.D. Va. Oct. 13, 2011). However, the Court's decision does not address the apparent conflict noted above, or provide the vocational expert testimony necessary to determine if the conflict was addressed and resolved. "The ALJ must resolve the conflict before relying on the [vocational expert's] testimony and

---

[6] In Hylton v. Colvin, the court allowed the ALJ to rely on testimony by a vocational expert at a prior hearing even though the administrative record did not contain a transcript from the previous hearing. No. 4:13cv67, 2015 U.S. Dist. LEXIS 14879 (W.D. Va. Feb. 9, 2015). However, the plaintiff in Hylton did "not challenge the [previous ALJ's] assessment of her past relevant work or the [current ALJ's] reliance on those prior findings." Instead, the plaintiff argued that the previous ALJ's hypothetical was inadequate because the current ALJ found additional severe medical impairments. Id.

8

must explain the resolution of the conflict in his decision." Henderson v. Colvin, No. 15-1437, 2016 WL 1320779, at *3 (4th Cir. Apr. 5, 2016) (citing SSR 00-4p). "An ALJ has not fully developed the record [to satisfy the substantial evidence standard] if it contains an unresolved conflict between the expert's testimony and the Dictionary." Pearson, 810 F.3d at 210.

The court cannot rely solely upon the position of security monitor that does not appear to conflict with the DOT because, "it is not enough that some positions exist…[t]he vocational expert must testify as to how many of these positions do not require [frequent handling or reaching]." Pearson, 810 F.3d at 211. As the court stated in Pearson, reviewing courts are not to "guess what these occupations require in reality" because it is the responsibility of the ALJ to elicit an explanation from the vocational expert and resolve such conflicts. Pearson, 810 F.3d at 211. Thus, this matter should be remanded with instructions to identify and resolve any apparent conflicts between the DOT and the vocational expert's testimony as required by Pearson, as well as the additional arguments raised by Ramey's counsel in this appeal, including the impact of the Commissioner's recent decision to award Ramey benefits as of May 29, 2015.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **DENYING** the final decision of the Commissioner, **GRANTING IN PART** summary judgment to the plaintiff, and **REVERSING** and **REMANDING** this matter to the Commissioner for further administrative consideration.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

9

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 2, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge